NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1503
_____

STEPHEN GILMORE; KAREN GILMORE, H/W,
                                                    Appellants

v.

NEIL R. HOLLAND, M.D.; RANDLE H. STORM, M.D.; GEISINGER MEDICAL
CENTER; GEISINGER CLINIC D/B/A GEISINGER MEDICAL GROUP; JOHN
DOES 1-10; JANE DOES 1-10; ABC CORPORATIONS 1-10,

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 4-17-cv-01781)
District Judge:  Honorable Yvette Kane

Submitted Pursuant to Third Circuit L.A.R. 34.1(a):
October 29, 2018

Before:  CHAGARES, JORDAN, and VANASKIE, <u>Circuit Judges</u>.

(Filed: December 12, 2018)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

CHAGARES, Circuit Judge.

Stephen and Karen Gilmore filed an eleven-count complaint against Geisinger Medical Center ("GMC"), its related corporate entity, and Mr. Gilmore's treating doctors Neil R. Holland, M.D. and Randle H. Storm, M.D. at GMC (collectively, "defendants"), seeking to recover for the extensive injuries — including paralysis — that Mr. Gilmore suffered after a medical procedure. Only one count, brought under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), raises a federal claim. The defendants moved to dismiss the claim pursuant to Fed. R. Civ. P. 12(b)(6) on the basis that there is no plausible claim under EMTALA. The United States District Court for the Middle District of Pennsylvania granted the motion, and the Gilmores appeal that decision. For the reasons stated below, we will affirm.

I.

Reviewing the District Court's dismissal, we accept as true the factual allegations in the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). We write solely for the parties and therefore recite only the facts necessary to our disposition.

Mr. Gilmore had a scheduled, cardiac ablation procedure at GMC on October 7, 2015. Soon after that procedure, while he was still admitted as a patient, his medical condition worsened. He complained of upper back pain, and his creatinine levels increased. The following day, he was acutely hypertensive, and his legs felt weak and heavy. By midday, his kidneys were failing. His back pain worsened, his creatinine levels continued to rise, and he had been unable to urinate since the day prior.

2

By evening, Mr. Gilmore's lower extremities were paralyzed. Spinal surgery was conducted the following morning to relieve the spinal cord compression resulting from a hemorrhage. On October 15, 2015, Mr. Gilmore was transferred to a rehabilitation center. He has not returned home since. Mr. Gilmore is paralyzed, suffers from severe neurological deficits, and requires extensive nursing home and rehabilitative care.

The Gilmores allege ten tort-based causes of action and one federal cause of action arising under EMTALA. The defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), on grounds that the Gilmores did not state a plausible claim under EMTALA, and without EMTALA, the court lacked subject matter jurisdiction. The District Court granted the motion in its entirety. The Gilmores timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we exercise plenary review over the District Court's dismissal for failure to state a claim. Delaware Nation v. Pennsylvania, 446 F.3d 410, 415 (3d Cir. 2006).

## III.

EMTALA requires hospitals that receive federal funding to provide a "medical screening examination" for people who "come[ ] to the emergency department" regardless of insurance coverage or ability to pay. 42 U.S.C. § 1395dd(a). The statute further provides:

> If any individual . . . comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either — (A) . . . for such further medical examination and such

3

> treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in accordance with subsection (c).

Id. at § 1395dd(b)(1). Congress has expressly delegated authority to the Department of Health and Human Services' Centers for Medicare and Medicaid Services ("CMS") to construe Medicare-related statutes, like EMTALA, through rules and regulations. See id. at § 1395hh; see also Torretti v. Main Line Hospitals, Inc., 580 F.3d 168, 174 (3d Cir. 2009) ("CMS has the congressional authority to promulgate rules and regulations interpreting and implementing . . . EMTALA.").

CMS has promulgated a regulation providing that a hospital's responsibilities under EMTALA end when an individual who came to the hospital for an emergency is then admitted "as an inpatient for further treatment." 42 C.F.R. § 489.24(a)(1)(ii) (2013). The regulation further provides that the stabilization requirement does not apply "to an inpatient who was admitted for elective (nonemergency) diagnosis or treatment." Id. at § 489.24(d)(2)(ii).

We have held that this regulation is entitled to deference under Chevron USA, Inc. v. Natural Res. Defense Council, Inc., 467 U.S. 837 (1984), because it is "consistent with EMTALA, and is in accord with the Act's intent." Torretti, 580 F.3d at 177. The purpose of EMTALA is "to curb the problem of patient dumping," and therefore carving out an exception for individuals who have already been admitted as patients does not conflict with the Act's goal. Id.

The regulation and our decision to defer to it answer the issue in this case. The Gilmores allege that GMC's responsibilities under EMTALA were triggered on October

8, 2015, when the emergency medical condition was identified. That is, even though Mr. Gilmore had been admitted as an inpatient on October 7 for a nonemergency procedure, once his condition became emergent on October 8, GMC was obligated under EMTALA to stabilize him.[1] But Mr. Gilmore did not "come[ ] to a hospital" with "an emergency medical condition." See 42 U.S.C. § 1395dd(b)(1). His condition became emergent the following day, after he was already receiving care as an inpatient. Because hospitals are not required under EMTALA and its accompanying regulation to stabilize inpatients, the Gilmores cannot state a plausible claim for relief under EMTALA.

We recognize that what Mr. Gilmore has suffered — like the harm alleged in most cases brought under EMTALA — is "tragic." Torretti, 580 F.3d at 170. But EMTALA "is not a federal malpractice statute." Id. If the defendants have acted negligently, he is not without recourse. He retains the full arsenal of state law claims at his disposal, but he must now pursue those claims in state court.

## IV.

For the reasons stated above, we will affirm the Order of the District Court.

---

[1] The Gilmores acknowledge that the CMS regulation forecloses this argument, but they contend the regulation "directly conflicts" with the statute. Gilmore Br. 12. This Court in Torretti has held otherwise, and a panel of this Court is not permitted to overrule a precedential opinion. 3d Cir. I.O.P. 9.1 (2015). Accordingly, Torretti binds this panel.

5